

**SO ORDERED.**

**SIGNED this 26th day of October, 2020.**

Mitchell L. Herren
United States Bankruptcy Judge

_____

PUBLISH

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

IN RE:

**ISIDRO ROSALES, JR.**
**REYNA S. LOPEZ,**

                Debtors.

**J. MICHAEL MORRIS, Trustee,**

                Plaintiff,

vs.

**TIMOTHY J. KING, and**
**LAW OFFICE OF PAUL HOGAN,**
**LLC,**

                Defendants.

Case No.17-10729
Chapter 7

Adv. No. 19-5126

# MEMORANDUM OPINION

1

In this Chapter 7 to Chapter 13 and back to Chapter 7 bankruptcy case, settlement proceeds from a co-debtor's personal injury lawsuit during Chapter 13 proceedings were improperly used by the debtors. After failing to collect the net proceeds of the settlement from the debtors, the Chapter 7 trustee filed this adversary proceeding against debtors' personal injury attorneys for turnover of the settlement proceeds and disgorgement of the fees and expenses paid to them from the settlement.

Attorneys employed by Chapter 13 debtors are subject to turnover under 11 U.S.C. § 542(a) if the settlement proceeds are property of the estate, the attorneys knew of the bankruptcy, and were in possession, custody, or control of the settlement proceeds during the case. In addition, attorneys employed by Chapter 13 debtors in connection with a bankruptcy case are required to disclose the terms and source of compensation and any fee-sharing arrangements under 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016. Upon conclusion of the matter, by way of settlement or otherwise, attorneys must also file a fee application for review by the bankruptcy court and obtain allowance and court approval of their fees and expenses under § 329, § 330(a)(4)(B), and Rule 2016. Failure of counsel to do so can have severe consequences that include disgorgement of their fees and expense reimbursements, even when the attorneys provided value to the bankruptcy estate.

2

As discussed below, the trustee's turnover complaint and request for disgorgement of attorney fees and expenses is granted for the reasons stated in this opinion.[1]

## I. Jurisdiction

An action for turnover of property of the estate under § 542(a) is a core proceeding over which the Court has subject matter jurisdiction.[2] Whether an attorney must disgorge fees for failure to comply with §§ 329 and 330 and Rule 2016 is a matter concerning administration of the bankruptcy estate, and is also a core proceeding.[3] The parties have stipulated to the Court's jurisdiction and consent to the Court's entry of a final order.[4]

## II. Findings of Fact[5]

Debtor Lopez was injured in a car accident on December 4, 2015. She retained the services of Law Office of Paul Hogan, LLC (Hogan) on June 15, 2016 to pursue her claim for injuries on a contingency basis.[6] Lopez's fee agreement provided that if a lawsuit was necessary to obtain recovery, Hogan could refer the matter to another attorney whom would share in the fee.

---

[1] Trial was held on the Chapter 7 trustee's adversary complaint on August 18, 2020. Plaintiff J. Michael Morris, Chapter 7 trustee of the debtors Isidro Rosales and Reyna S. Lopez bankruptcy case, appeared in person. Defendant Timothy J. King and defendant Paul Hogan of the Law Office of Paul Hogan, LLC also appeared in person.

[2] *See* 28 U.S.C. § 157(b)(1) and (b)(2)(A) and (E); 28 U.S.C. § 1334(b) and D. Kan. S.O. 13-1 (Amended Standing Order of Reference).

[3] 28 U.S.C. § 157(b)(2)(A).

[4] Doc. 19, p. 2. Unless otherwise indicated, all statutory references are to Title 11 U.S.C., as amended, and all rule references are to the Fed. R. Bankr. P.

[5] The parties agreed to extensive stipulations of fact in the final Pretrial Order. *See* Doc. 19, pp. 3-6.

[6] Ex. 1.

**3**

On April 26, 2017, debtors filed a voluntary Chapter 7 bankruptcy. J. Michael Morris was appointed Chapter 7 trustee (Morris or Trustee). Debtors did not initially disclose the existence of the prepetition car accident or any claims against third parties arising therefrom on their bankruptcy schedules.[7]

### *Chapter 7 Trustee's Employment of Attorneys as Special Counsel to Prosecute Debtor's Prepetition Personal Injury Claim*

On August 29, 2017, Morris filed an application to employ Hogan under § 327(e) for the special purpose of representing the estate in Lopez's personal injury claim on a proposed one-third contingency fee basis.[8] Morris filed an identical § 327(e) application on October 6, 2017 to employ Timothy J. King (King) to represent the estate in the same matter.[9] King's affidavit stated that he would share a combined one-third contingency fee with Hogan.[10] The Court approved both employment applications; the orders approving King's and Hogan's employment as special counsel provided that their compensation would be subject to the Court's review upon the attorneys' final application for allowance of fees.[11]

On November 10, 2017, King filed a petition in state court against KW, the individual who allegedly caused Lopez's injury.[12] That suit was brought in the name of Morris, as Trustee of the bankruptcy estate of Lopez. In the petition, King alleged

---

[7] Ex. 3, p. 12, lines 33, 34.
[8] Ex. 19. Emphasis added.
[9] Ex. 21.
[10] King and Hogan did not practice law in the same firm. The terms of the fee-sharing agreement between Hogan and King were not disclosed.
[11] Ex. 20, 22.
[12] Ex. A.

4

that Lopez's cause of action is property of the bankruptcy estate being administered by Morris.

### The Chapter 13 Proceedings

On February 8, 2018 debtors moved to convert their Chapter 7 case to Chapter 13 under § 706(a).[13] Morris objected[14] but the Court granted the motion to convert on April 13, 2018 on the condition that:

> (a) any and all net recovery from the personal injury action be [sic] shall be turned over to the Chapter 13 Trustee; and (b) the case shall be re-converted to Chapter 7, rather than dismissed, in the event a Plan is not confirmed or the Debtors default on any confirmed Plan.[15]

Upon conversion of the bankruptcy case to Chapter 13, King substituted Lopez for Morris as plaintiff in the state court action.[16] Lopez executed an addendum to the Hogan fee agreement on April 17, signifying her retention of King for the personal injury claim under the same terms and conditions as Hogan.[17] Debtors amended their bankruptcy Schedule A/B on May 18, 2018, disclosing the personal injury claim.[18]

### Debtors' Employment of Attorney King to Prosecute Lopez's Personal Injury Claim on behalf of the Chapter 13 Estate

---

[13] Ex. 4.

[14] Doc. 34.

[15] Ex. 5, p. 2, ¶ 3.

[16] Ex. C. In King's motion to substitute, he represented that by virtue of the conversion of the case to Chapter 13, "Lopez's cause of action of her personal injuries were turned [sic] to her individually." As discussed herein, that representation is not accurate. Lopez's cause of action remained property of the estate in the Chapter 13 bankruptcy and Lopez was in possession of it.

[17] Ex. 7.

[18] Ex. 6, p. 4.

5

After conversion to Chapter 13, *debtors* filed an application to employ King as special counsel for the estate and to represent debtor Lopez on the personal injury claim.[19] The application stated that King would be paid fees on a contingency fee basis "pursuant to the attached employment agreement."[20] However, the employment agreement was not in fact attached to the application.[21] Nor did the application reference the pending state court lawsuit.

King's affidavit under D. Kan. L.B.R. 2014.1 was attached to the application. In it, King averred he was disinterested and that he was qualified to represent Lopez "as special counsel for the estate."[22] King also stated that he "underst[ood] that the Court's approval of the Application for employment is not approval of any proposed terms or [sic] compensation . . ."[23] On June 14, 2018, the Court signed an "Order Granting Debtors' Application Pursuant to § 327(e) to Employ Timothy J. King as Special Counsel for the Estate," on the terms set forth in the application.[24] The Standing Chapter 13 Trustee Carl Davis approved the Order.

Neither debtors' employment application nor King's affidavit mentioned a fee sharing agreement with Hogan or its terms. Hogan was not similarly employed by debtors during the Chapter 13 case. Neither King nor Hogan filed a Rule 2016 disclosure of compensation.[25]

---

[19] Ex. 17.
[20] *Id.* at ¶ 3.
[21] Ex. 17. *See also* Doc 48.
[22] Ex. 17, p. 3, ¶ 1.
[23] *Id.* at ¶ 5.
[24] Ex. 18.
[25] *See* Fed. R. Bankr. P. 2016(b).

**6**

### *The Chapter 13 Plan*

Debtors filed their Chapter 13 plan on April 18, 2018.[26] In it, they proposed to make plan payments of $150 per month for thirty-six months. In addition to the monthly payments, Debtors proposed to "pay to the [Chapter 13] Trustee all amounts necessary to pay all timely filed and allowed claims in full out of any net recovery from a pending personal injury claim being prosecuted by attorney Tim King."[27] Under Section 16 of the plan, all property of the estate would vest in debtor "at discharge or dismissal of the case," not at confirmation. Debtors' plan included the following non-standard provision: "Debtors will file an application to approve the employment of attorney Tim King to prosecute a personal injury claim *on behalf of the bankruptcy estate*, with all timely filed and allowed creditor claims paid from the net recovery."[28]

On July 31, 2018, the Court confirmed debtors' Chapter 13 plan as modified.[29] Specifically, the confirmation order provided that "in the event of post-confirmation default, the [Chapter 13] Trustee will seek re-conversion of the case pursuant to the Order Granting Debtors' Motion to Convert to Chapter 13 entered April 13, 2018."[30] The debtors were obligated to report to Trustee Davis any proceeds received from the personal injury lawsuit, by settlement or otherwise, during the pendency of the case, and were prohibited from disposing of the proceeds

---

[26] Ex. 8.
[27] Ex. 8 at § 3.5.
[28] *Id.* at § 18. Emphasis added.
[29] Ex. 9.
[30] *Id.* at ¶ 17.

7

without prior court order.[31] With respect to vesting, the confirmation order provided that "all property of the bankruptcy estate that is <u>not</u> proposed or reasonably contemplated to be distributable under the Plan, shall re-vest in Debtor as Debtor's property *following dismissal or discharge*, unless the property earlier vested by terms of the confirmed plan."[32]

### *The Personal Injury Settlement and Re-Conversion to Chapter 7*

By a January 9, 2019 e-mail, King advised Trustee Davis that the insurer had made a "final and best" settlement offer of $22,500 on Lopez's personal injury lawsuit.[33] Apparently weighing whether to accept the offer, Lopez inquired how much of that amount Trustee Davis would receive if she settled the lawsuit. Davis's office responded six days later that $18,163 was needed to complete her case. In other words, the settlement offer was insufficient to pay both King's fee and all creditors' claims in full. At the time the Chapter 13 Trustee's office responded, King held the $22,500 settlement check from Progressive Insurance dated January 11, 2019[34] made payable to his trust account and O/B/O Reyna Lopez. King did not request Trustee Davis's approval of the settlement.

Notwithstanding the shortfall, on January 28 Lopez directed and authorized King to settle the lawsuit for $22,500.[35] She also executed a settlement statement

---

[31] *Id.* at ¶¶ 5-6.
[32] *Id.* at ¶ 13. Emphasis added.
[33] Ex. 10
[34] The stipulation in the final pretrial order recites the date of the check as 2018; the Court believes the year to be a typographical error and should be 2019 given the timing of the $22,500 settlement offer and communications between King and Trustee Davis' office in January of 2019. *See* Doc. 19, p. 6, ¶ 17 and Ex. 10.
[35] Ex. 11

8

that set forth the deductions for expenses ($681.56) and a one-third contingency fee ($7,272.81), yielding a net recovery of $14,545.63 to Lopez. King delivered to Lopez that same day a check drawn on his trust account and made payable to Lopez in the amount of $14,545.63.[36] He reminded Lopez that "these funds are subject to your Chapter 13 bankruptcy," and advised her to contact her bankruptcy attorney before spending the money in any way.[37] Lopez cashed the check the same day, but did not remit the funds to Trustee Davis.[38] King also sent from his trust account a check to Hogan in the amount of $2,894.30 for Hogan's share of the contingency fee and reimbursement of Hogan's expenses.[39] King retained the balance of $5,060.07 for his fees and expenses. On January 29, King and opposing counsel dismissed the state court lawsuit with prejudice to complete the settlement.[40] Neither King, nor Hogan filed a fee application or motion for approval of their attorney fees and expenses pursuant to Rule 2016(a). Neither filed a supplemental statement pursuant to Rule 2016(b) within fourteen days of receipt of the compensation.

In late February 2019, Trustee Davis filed a motion requesting turnover from debtors of the $14,545.63 net recovery from the settlement within twenty-one (21) days, failing which he asked the Court to re-convert the case to Chapter 7 under § 1307(c)(6).[41] That motion was granted without objection.[42] When debtors failed to

---

[36] Ex. 12 and Ex. 16.
[37] Ex. 12. King copied his January 28 correspondence with Lopez to Trustee Davis and debtors' bankruptcy attorney via e-mail.
[38] Ex. 16.
[39] Ex. I. *See also* Doc. 19, p. 6, ¶ 15,
[40] Ex. D.
[41] Ex. 13.
[42] Ex. 14.

**9**

comply with the turnover order their bankruptcy case was reconverted to Chapter 7 on April 16, 2019 and Morris was again appointed as Chapter 7 Trustee. Debtors' bankruptcy counsel moved to withdraw as counsel for the debtors on April 18, which the Court granted.[43]

On July 19 Trustee Morris commenced an adversary proceeding against debtors seeking turnover of the settlement funds disbursed to them, including any property purchased with the settlement funds, and revocation of their Chapter 7 discharge for spending the funds and purchasing in part, a 2002 Chevrolet Suburban, and for failure to obey the Chapter 13 confirmation order requiring turnover of the net settlement funds to fund their Chapter 13 plan.[44] Debtors defaulted and judgment was entered October 24, 2019 in favor of Morris in the amount of $14,545.43, together with prejudgment interest at 10%, for turnover of the Suburban, and for revocation of debtors' discharge previously entered on July 25, 2017.[45] Since entry of the judgment Morris has been engaged in activity to collect the judgment, with some success.

Morris commenced this adversary proceeding against King and Hogan on December 9, 2019, seeking turnover of the full settlement amount and disgorgement of their fees and expenses paid from the $22,500 settlement, some $7,954. The proceeding was tried on the parties' extensive stipulations of fact in the final

---

[43] Doc. 74, 81.
[44] Ex. F. *See also Standiferd v. United States Trustee,* 641 F.3d 1209, 1215-16 (10th Cir. 2011) (violating confirmation order may be a basis for denial of debtors' discharge after conversion of case from Chapter 13 to Chapter 7).
[45] Ex. G.

10

pretrial order,[46] trial exhibits, and the testimony of Chapter 13 trustee Carl Davis, the lone witness called by defendants. After the parties submitted post-trial briefs,[47] the Court took the matter under advisement.

III.     Conclusions of Law

Trustee Morris's complaint seeks turnover of the settlement proceeds in the amount of $22,500 from debtor Lopez's prepetition personal injury (PI) claim as property of the estate under § 542(a). Included as part of those proceeds, are attorney King's and Hogan's fees and expenses that Morris contends should be disgorged for their failure to file a fee application pursuant to § 330(a)(1) and obtain court approval of their fees and expenses before paying themselves from the settlement.

Defendants King and Hogan contend in the pretrial order that neither turnover, nor disgorgement are viable claims because King and Hogan represented debtor Lopez, not the bankruptcy estate, and that the PI cause of action belonged to her personally, and not the estate. King and Hogan also claim in the pretrial order that the Trustee's claims against them are barred by collateral estoppel, res judicata, and the doctrine of election of remedies since the Trustee sought and obtained a judgment against debtors for turnover of the net settlement funds. They also claim that because the case was settled during the Chapter 13 case, their fees

---

[46] Doc. 19.
[47] Doc. 25 and 26. Defendant Hogan did not file a separate post-trial brief, but adopted defendant King's brief in its entirety. *See* Doc. 27. Thus, references to defendant King in this Opinion, may mean both defendants, depending on the context of the statement.

11

and expenses for prosecuting Lopez's PI claim are not subject to the Bankruptcy Code and Rules for obtaining court approval.

In their post-trial brief, defendants focus on their contention that because debtor Lopez had the right to control her litigation, she had the right to demand that King turn over the net settlement proceeds to her. They contend that § 327 and Rule 9019 do not apply to a debtor in possession in Chapter 13.[48] They also raise for the first time a defense of judicial estoppel.

### A. Turnover of Personal Injury Settlement, § 542(a)

Defendants King and Hogan have operated under a fundamental misapprehension of what constitutes property of the estate and the effect of conversion. Defendants have also overlooked specific vesting language in debtors' confirmed Chapter 13 plan and plan confirmation order. There is but a single bankruptcy case that moved between different chapters of the Bankruptcy Code. Section 541(a) applies in both Chapter 7 and Chapter 13. None of the exclusions from property of the estate listed in § 541(b) apply in this case.

On a claim for turnover, the trustee has the burden to establish a prima facie case that the property sought is property of the estate. If the trustee makes a prima facie case, the burden shifts to the debtor or opposing party to prove the property is excluded from the estate.[49] State law governs and defines property interests,[50] but

---

[48] Section 327(a) and (e) authorize the *trustee* to employ, with court approval, professional persons and special counsel, respectively. Fed. R. Bankr. P. 9019(a) requires a *trustee* to file a motion for court approval of a settlement.

[49] *In re Purcell,* 573 B.R. 859, 862 (Bankr. D. Kan. 2017) (preponderance of the evidence standard).

[50] *Butner v. United States,* 440 U.S. 48, 55 (1979).

12

federal bankruptcy law determines the extent to which that interest is property of the estate.[51]

The trustee must establish the following elements of turnover under § 542(a): (1) the property sought to be turned over is property of the estate;[52] (2) the party against whom turnover is sought is an "entity;"[53] (3) the entity was in possession, custody, or control of the property during the case; and (4) the trustee may use or sell the property. Defendants King and Hogan challenge only the first element— asserting that the PI claim and settlement are not property of the estate. They are incorrect.

1. **The prepetition PI claim and settlement are property of the Chapter 7 estate under § 541(a)(1) and (a)(6).**

   a. *Property of the estate is determined at commencement of the case.*

Section 541(a)(1) provides:

(a) The *commencement of a case* under section 301, 302, or 303 of this title *creates an estate*. Such estate is comprised of all the following property, wherever located and by whomever held:

---

[51] *Parks v. FIA Card Servs., N.A. (In re Marshall),* 550 F.3d 1251, 1255 (10th Cir. 2008).
[52] Under § 704(a)(1) one of the primary duties of a Chapter 7 trustee is to "collect and reduce to money the *property of the estate for which the trustee serves . . ."* (Emphasis added.). The reference to turnover of "property" in § 542(a) means property of the estate. Section 542(a) refers to turnover of "property" that the trustee may use, sell or lease under § 363. Section 363(b)(1) in turn provides that a "trustee . . . may use, sell, or lease, other than in the ordinary course of business, *property of the estate . . . ."* (Emphasis added.). Thus, by reference to § 363 in § 542(a), the reference to "property" means "property of the estate" – property that is subject to administration by the trustee. The case law recognizes that § 542(a) only authorizes turnover of property of the estate. *See e.g. In re Dorsey,* 497 B.R. 374, 382-83 (Bankr. N.D. Ga. 2013); *In re Osterwalder,* 407 B.R. 291, 294 (Bankr. N.D. Ohio 2008); *In re Rosenzweig,* 245 B.R. 836, 839-40 (Bankr. N.D. Ill. 2000).
[53] The definition of "entity" in § 101(15) includes a person. Thus, defendants may be subject to turnover of property of estate.

> (1) . . . all legal or equitable interests of the debtor in property *as of the commencement of the case*.[54]

The Tenth Circuit Court of Appeals recently reiterated that the language of § 541(a)(1) places two limitations on property of the estate: a temporal limitation and a qualitative limitation. Regarding the temporal limitation [*i.e.* commencement of the case], "it establishes a clear-cut date after which property acquired by the debtor will normally not become property of the bankruptcy estate;" qualitatively, the estate's rights are no greater than they were when held by the debtor.[55] Here, debtor Lopez was injured in a 2015 prepetition car accident. If she had a state law property interest in the PI claim when she commenced her bankruptcy case on April 16, 2017, it is property of the Chapter 7 estate.

### b. Debtor's cause of action arising from the prepetition car accident is property of the estate, as is the settlement of that cause of action.

The case law is clear. A cause of action belonging to the debtor that has accrued prior to commencement of the bankruptcy case is property of the estate.[56] The accrued PI claim is property of the estate even if the PI lawsuit is not filed until

---

[54] 11 U.S.C. § 541(a)(1) (Emphasis added). The exceptions in § 541(b) and (c)(2) are not applicable

[55] *Cohen v. Chernushin (In re Chernushin),* 911 F.3d 1265, 1269-70 (10th Cir. 2018) (quoting *Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.),* 84 F.3d 1281, 1285 (10th Cir. 1996)), *cert. denied* 139 S. Ct. 2649 (2019).

[56] *See In re Hedged-Investments Assocs. Inc.,* 84 F.3d 1281, 1285 (causes of action belonging to debtor at commencement of bankruptcy case fall within definition of estate property under § 541(a)(1)); *In re White,* 297 B.R. 626, 634 (Bankr. D. Kan. 2003) (cause of action for injuries resulting from prepetition two-car accident was property of estate); *In re Smith,* 293 B.R. 786, 788 (Bankr. D. Kan. 2003) (stating rule but determining cause of action for injury caused by use of weight-reduction drug Fen-Phen had not accrued at time of commencement of case and was not property of the estate); *In re Purcell,* 573 B.R. 859, 862-64 (Bankr. D. Kan. 2017) (applying discovery rule with respect to when injury claim accrued from defective pelvic mesh device).

14

after commencement of the case.[57] The post-petition settlement of the PI lawsuit is also property of the estate under § 541(a)(6) as proceeds from the cause of action.[58]

Under Kansas law, a cause of action for personal injury does not accrue until the act giving rise to the cause of action first causes substantial injury, or under the discovery rule, when the fact of injury becomes reasonably ascertainable.[59] Here, the parties stipulated that Lopez held a PI claim arising from the 2015 car accident on the date of the petition. That stipulation implies that Lopez's cause of action had accrued. There is no issue of later discovery of the injury. Debtor was obviously aware of her injuries from the car accident as she first retained counsel (Hogan) to pursue the claim in June of 2016, also prior to commencement of her bankruptcy case. Lopez's PI claim accrued prior to commencement of her Chapter 7 case and is property of the estate.

> ### c. Conversion of the case to Chapter 13 and re-conversion to Chapter 7 did not change the date of commencement of the case nor remove the PI claim from property of the estate.

---

[57] *See In re Bronner,* 135 B.R. 645, 647 (9th Cir. BAP 1992) (accrued claim for personal injuries becomes estate property, even if unliquidated at the time the petition was filed); *Miller v. Shallowford Cmty. Hosp., Inc.,* 767 F. 2d 1556, 1561 (11th Cir. 1985) (prepetition cause of action was property of the estate even though the debtor had not formally filed the action); *In re White,* 297 B.R. 626, 629 (prepetition cause of action for injuries from car accident where lawsuit was filed and settled after commencement of bankruptcy case).
[58] *In re Bardales,* 609 B.R. 260 (Bankr. D. Idaho 2019) (post-petition settlement of class action consumer protection act claims constituted property of the estate under both § 541(a)(6) and (a)(7)); *In re Smith,* 293 B.R. 786, 788 (stating if the accrued cause of action is property of the estate, "a later recovery on that cause of action would be derivative . . . and also property of the estate."); *In re Stinson,* 221 B.R. 726, 729 (Bankr. E.D. Mich. 1998) (proceeds of post-petition settlement of personal injury claim are property of the estate under § 541(a)(6)).
[59] *See* KAN. STAT. ANN. § 60-513(a)(4) and (b) (2005); *Moss v. Mamalis,* 36 Kan. App. 2d 151, 158, 138 P.3d 380 (2006) (Cause of action for legal malpractice did not accrue until plaintiff suffered injury).

15

The defendants suggest that the PI claim ceased to be property of the estate when debtors voluntarily converted the bankruptcy case from Chapter 7 to Chapter 13 and the Chapter 7 trustee's services terminated. They misapprehend the effect of conversion and conflate conversion between bankruptcy chapters with commencement of a case. They also ignore the vesting provisions in debtors' confirmed Chapter 13 plan.

Under § 348(a), a case converted from one chapter to another does not change the <u>date</u> of the filing of the petition, the commencement of the case, or the order for relief. The exceptions to this rule are contained in § 348(b) and (c), but neither applies in this case. Under § 348(e), the Chapter 7 trustee's services automatically terminate upon conversion to Chapter 13. But the bankruptcy case remains the same and proceeds under the chapter to which the case is converted. The conversion does not create a new bankruptcy case nor change the date of commencement of the case.[60]

Here, debtors commenced their bankruptcy case under Chapter 7. As addressed above, the prepetition PI cause of action and settlement are property of the estate under § 541(a)(1) and (a)(6). Debtors voluntarily converted their case

---

[60] *See Harris v. Viegelahn,* 575 U.S. 510, 135 S. Ct. 1829, 1836 (2015) (discussing conversion from Chapter 13 to Chapter 7 and stating that conversion of case does not commence a new bankruptcy case; the existing case continues along another track without effecting a change in the date of the filing of the petition); *Standiferd v. United States Trustee,* 641 F.3d 1209, 1215 (10th Cir. 2011) (concluding under § 348(a) that in a case converted from Chapter 13 to Chapter 7, the converted case is commenced on the date of filing the initial bankruptcy petition and "the case" includes proceedings that occur pre- and post-conversion; conversion does not begin a separate bankruptcy case); *In re Wilkinson,* 507 B.R. 742, 746-47 (Bankr. D. Kan. 2014) (conversion of case from one chapter of Bankruptcy Code to another does not change the petition date or commencement of the case).

16

under § 706(a) to Chapter 13. Morris was terminated as Chapter 7 trustee and the standing Chapter 13 trustee was appointed. The prepetition PI claim and settlement remained property of the bankruptcy estate in Chapter 13 because § 1306(a), defining property of the estate in Chapter 13, incorporates § 541(a) property as property of the Chapter 13 estate.[61] Chapter 13 Trustee Davis acknowledged at trial that the PI claim was property of the Chapter 13 estate. In short, the prepetition PI claim would have been property of the estate whether debtors had originally commenced a case under Chapter 7 or Chapter 13.

Unlike a Chapter 7 debtor, a Chapter 13 debtor "remains in *possession* of all property of the estate," unless the confirmed plan or confirmation order provides otherwise.[62] The Chapter 13 debtor is commonly referred to as a debtor-in-possession. The debtor's possession of property of the estate does not make the PI claim debtor's property; nor does that possession mean the PI claim is no longer property of the estate. Here, Lopez remained in possession of property of the estate while in Chapter 13 and could prosecute the PI claim in her name as a Chapter 13 debtor *on behalf of the bankruptcy estate*.[63] The confirmed plan provided that debtors would apply and obtain court approval of King's employment to prosecute

---

[61] Section 1306(a) states: "Property of the estate includes, *in addition to the property specified in section 541 of this title . . . .*" (Emphasis added.).
[62] Section 1306(b). Emphasis added.
[63] *Smith v. Rockett,* 522 F.3d 1080, 1081-82 (10th Cir. 2000) (holding that Chapter 13 debtor had standing to bring prepetition Fair Debt Collection Practices Act claim in her own name on behalf of bankruptcy estate); *In re Hutchinson,* 354 B.R. 523, 533 (Bankr. D. Kan. 2006) (stating that Bankruptcy Code, § 1303, gives Chapter 13 debtors the exclusive right to use and control estate property; Chapter 13 trustee can't compel turnover of property of the estate). *See also* Fed. R. Bankr. P. 6009.

17

the personal injury claim "on behalf of the bankruptcy estate."[64] That is precisely what occurred.[65]

In addition to § 348(a) and § 1306, defendants ignore the vesting provisions of debtors' confirmed plan and confirmation order. Section 1322(b)(9) permits a Chapter 13 plan to provide for the vesting of property of the estate in debtor "on confirmation of the plan or at a later time." Here, the debtors' plan vested property of the estate in debtor "at a later time." Section 16 of debtors' plan checked the box that property of the estate would vest in debtor "at discharge or dismissal of the case," not at confirmation.[66] The confirmation order likewise provided that property of the estate <u>not</u> proposed to be distributed under the plan would re-vest "in Debtor *as Debtor's property* <u>following</u> dismissal or discharge."[67] These vesting provisions clearly indicate that the PI claim and settlement remained property of the estate throughout Chapter 13 and never vested in debtors.

Finally, when debtors failed to remit the settlement proceeds to the Chapter 13 trustee to pay their creditors as required by their confirmed plan, the Chapter 13 trustee moved to re-convert debtors' case to Chapter 7 under § 1307(c)(6) for a material default, as provided by the terms of the order confirming the debtors' plan.[68] Under § 348(f)(1)(A), property of the estate as of the date of filing the petition (*i.e.* § 541(a) property), that remains in the possession, or under control, of

---

[64] Ex. 8, § 18.
[65] Ex. 17 and 18.
[66] Ex. 8, § 16.
[67] Ex. 9, ¶ 13.
[68] Ex. 9, ¶ 17.

18

the debtor on the date of conversion became property of the estate in Chapter 7.[69] The debtor-in-possession remained in possession of the net settlement of the PI claim (property of the estate) on the date of conversion and therefore it is property of the estate in the converted Chapter 7.[70] Upon re-converting the case to Chapter 7, Rule 1019(4) required the Chapter 13 trustee and debtors as debtor-in-possession to turn over all property of the estate in their possession or control to the Chapter 7 trustee.

### 2. Defendants King and Hogan had "possession, custody, or control" of the PI settlement during the case.

In most jurisdictions the case law consistently holds that the turnover targets need not be in possession, custody, or control of property of the estate at the time turnover is sought.[71] They only need to have had possession, custody or control of

---

[69] Because debtors did not re-convert their case to Chapter 7 under § 1307(a), the exception in § 348(f)(2) is inapplicable.

[70] *See Harris v. Viegelahn,* 575 U.S. 510, 135 S. Ct. 1829, 1837 (absent debtor's bad-faith conversion from Chapter 13 to Chapter 7, the debtor's postpetition earnings and acquisitions do not become property of the Chapter 7 estate pursuant to § 348(f)(1)(A), enacted in 1994 (*i.e.* property of the estate is limited to § 541(a) property from the Chapter 13 estate)). *See also In re Pisculli,* 426 B.R. 52, 62 (E.D. N.Y. 2010) (under § 348(f)(1), property that Chapter 13 debtor acquires after petition date is not part of the post-conversion Chapter 7 estate), *aff'd* 408 F. Appx. 477 (2nd Cir. 2011).

[71] *Jubber v. Ruiz (In re Ruiz),* 455 B.R. 745, 751 (10th Cir. BAP 2011) (explaining that the language in § 542 alternatively permitting the trustee to recover the value of the property would be superfluous if the trustee could only recover the property presently possessed); *Matter of USA Diversified Products, Inc.,* 100 F.3d 53, 56 (7th Cir. 1996) (noting that if present possession were required, a party could thwart turnover simply by transferring the property to someone else; § 542(a) requires delivery of the property *or its value*); *In re Bailey,* 380 B.R. 486, 492-93 (6th Cir. BAP 2008) (fact that some portion of tax refund was not in debtors' possession at the time of turnover action does not defeat trustee's right to recover the full amount); *Shapiro v. Henson,* 739 F.3d 1198, 1202 (9th Cir. 2014) (noting two phrases in the turnover statute: "during the case" and "or the value of such property" mean the entity does not have to have possession, custody or control of property of the estate at the time the trustee seeks turnover). *But see Brown v. Pyatt (In re Pyatt),* 486 F.3d 423, 428 (8th Cir. 2007) (requiring the turnover target to have possession, custody, or

19

property of the estate at some point during the case.[72] Here, the parties stipulate

that King had possession, custody, and control of the $22,500 PI settlement check

made payable to him and held in his trust account during the case.[73] When King

disbursed to Hogan his share of the fees and expenses from the settlement, Hogan

had possession, custody, and control of $2,894.30 of the settlement proceeds during

the case.[74] The Trustee satisfies this element of the turnover claim.

### 3. The Trustee can "use" the PI settlement funds to pay debtors' creditors.

This final element for turnover is undeniably met. Section 542(a) is the

means by which a trustee collects property of the estate and administers the estate

by paying unsecured creditors and claims. That is one of the primary duties of a

Chapter 7 trustee.[75] The Chapter 7 trustee may use the PI settlement proceeds

pursuant to § 363(b)(1). The PI settlement was intended all along to pay creditors;

---

control of the property at the time the trustee moves for turnover). *Pyatt* appears to be the minority view.

[72] *See Rupp v. Auld (In re Auld),* 561 B.R. 512, 519-20 (10th Cir. BAP 2017) (holding that present possession was not a predicate to turnover under the plain language of § 542(a), citing *In re Ruiz, supra); Doucet v. Cooper (In re Cooper),* 263 B.R. 835, 838 (Bankr. S.D. Ohio 2001) (attorney employed by debtor to pursue prepetition personal injury claim and settled the claim with knowledge of debtor's bankruptcy was jointly and severally liable to the estate for full amount of settlement proceeds, even though attorney had already disbursed proceeds and did not have full control of the proceeds at the time of Chapter 7 trustee's demand for turnover); *In re USA Diversified Products, Inc.,* 100 F.3d 53, 56 (7th Cir. 1996) (Law firm representing bankruptcy debtor in nonbankruptcy matter that had possession, custody, or control over estate funds in firm's trust account, from which firm deducted accrued attorney fees before remitting balance to debtor's principal, was subject to turnover, even though law firm no longer had the funds in its possession);

[73] Doc. 19 (Final Pretrial Order), p. 6, ¶ 17; Ex. 10.

[74] *Id.,* p. 6, ¶ 15; Ex. I.

[75] Section 704(a)(1).

20

but for debtors' violating the terms of their plan and confirmation order, the turnover proceedings would have been unnecessary.

Having established all of the elements of the turnover claim with respect to the PI settlement proceeds, defendants King and Hogan "shall deliver to the trustee, and account for, such property or the value of such property."[76] The Trustee is entitled to a judgment for turnover of the value of the PI settlement proceeds against defendant King in the principal amount up to $22,500, and against defendant Hogan in the principal amount up to $2,894.30. As addressed later in this opinion, the defendants' liability for turnover is joint and several with debtors' liability.[77]

### B. Disgorgement of King's and Hogan's Attorney Fees

Though the PI settlement includes amounts subsequently disbursed for payment of defendants' attorney fees and expenses, which amounts are also encompassed by the turnover claim, the Trustee contends that alternatively, defendants should be required to disgorge those fees and expenses for violation of § 330 by not filing fee applications and obtaining court approval of their fees and expenses.[78] Hogan was paid fees and expenses of $2,894.30 from the PI settlement and King received $5,060.07. Neither filed fee applications or requests for reimbursement of expenses[79] and neither payment was approved by the Court. That

---

[76] Section 542(a).
[77] *See infra,* at pp. 39-40.
[78] Trustee's post-trial brief, Doc. 25, p. 6.
[79] For ease of reference, the Court will refer to "Fee Applications" as encompassing both attorney fees and reimbursement of expenses.

was not the only deficiency though, as discussed below.

As a preliminary matter, the Court observes from its review of the Bankruptcy Code and case law some confusion regarding *employing* attorneys on non-bankruptcy matters in Chapter 13. The courts are divided whether a Chapter 13 debtor seeking to employ special counsel to represent debtor in non-bankruptcy litigation must comply with § 327(e) and obtain court approval. Some courts find that Chapter 13 debtors must comply with § 327(e), though by its plain terms the statute applies to the *trustee's* employment of special counsel. Those courts, represented by *In re Goines*,[80] equate a Chapter 13 debtor-in-possession with a trustee.[81] Other courts, represented by *In re Gorski*,[82] hold that § 327(e) does not apply in Chapter 13, and Chapter 13 debtors are not required to file an application to employ special counsel and obtain court approval.[83]

The *Gorski* court explained this distinction in Chapter 13.

---

[80] *In re Goines,* 465 B.R. 704, 706 (Bankr. N.D. Ga. 2012).

[81] *See In re Wright,* 578 B.R. 570, 582 (Bankr. S.D. Tex. 2017) (by local bankruptcy rule in the Southern District of Texas an application to employ special counsel to prosecute tort claims and court approval in compliance with § 327(e) is required in individual Chapter 13 cases); *In re Lee,* 495 B.R. 107, 114 (Bankr. D. Mass. 2013) (stating, without discussion, that § 327(e) governs the employment of special counsel to the estate representative, including Chapter 13 debtors).

[82] *In re Gorski,* 519 B.R. 67, 71 (Bankr. S.D.N.Y. 2014).

[83] *See Gilliam*, 582 B.R. 459, 465-66 (Bankr. N.D. Ill. 2018); *In re Blume,* 591 B.R. 675, 679 (Bankr. E.D. Mich. 2018) (noting that attorney would not be paid from property of the estate); *In re Roberts,* 556 B.R. 266, 280 (Bankr. S.D. Miss. 2016); *In re Scott*, 531 B.R. 640, 645-46 (Bankr. N.D. Miss. 2015) (disagreeing with *Goines*); *In re Smith,* 536 B.R. 478, 483-84 (Bankr. M.D. Ala. 2015); *In re Jones,* 505 B.R. 229, 231-33 (Bankr. E.D. Wis. 2014) (individual Chapter 13 debtor is not a trustee for purposes of § 327; finding *Goines* unpersuasive); *In re Powell,* 314 B.R. 567, 569-70 (Bankr. N.D. Tex. 2004) (Chapter 13 debtor does not need court authorization to employ special counsel for her divorce); *In re Harris,* 298 B.R. 319, 321 (Bankr. E.D. Tenn. 2003); *In re Bowker,* 245 B.R. 192, 200 n. 8 (Bankr. D. N.J. 2000).

22

The Court notes that "a chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) the need to disclose compensation paid or agreed to be paid pursuant to section 329 and 2) the need for approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Cahill,* 478 B.R. 173, 176 (Bankr.S.D.N.Y.2012) (citations omitted). Mr. Levinson's arguments regarding retention are without merit. "Section 327 is not a requirement that must be met before a chapter 13 debtor may hire counsel in chapter 13 cases...." *Id.* The issue here is whether Mr. Levinson complied with §§ 329 and 330(a)(4)(B). *Id.*[84]

The Tenth Circuit Court of Appeals has not directly addressed the § 327(e) employment issue. This Court believes that based on the language of § 327, the *Gorski* line of cases is the better-reasoned view, though it need not in this case wade into whether § 327(e) applies in Chapter 13.

As noted previously, a Chapter 13 debtor is in possession of estate property. Here, when debtors voluntarily converted their case to Chapter 13 they employed King as special counsel under § 327(e) to prosecute the PI lawsuit (still property of the estate) and obtained court approval of King's employment. Under the rationale of *Gorski,* debtors were not required to do so, but when individual Chapter 13 debtors employ attorneys (even as special counsel), it triggers the requirements of § 329, Rule 2016, and § 330(a)(4)(B).[85] As in *Gorski,* King's employment is not the

---

[84] *Gorski,* 519 B.R. at 71.

[85] *See e.g., In re Lee*, 495 B.R. 107, 114-15 (recognizing that special counsel employed by Chapter 13 debtor under § 327(e) is required to file an application for compensation which conforms to Rule 2016 and obtain court authority for disbursements from personal injury award before paying himself); *In re Roberts,* 556 B.R. 266, 280 (noting that while a chapter 13 debtor's special counsel was not required to be approved under § 327, the attorney is not free from bankruptcy-court oversight, citing requirements to disclose compensation to be paid and court review and approval of compensation under § 330(a)(4)(B)); *In re Berg,* 356 B.R. 378, 382-83 (Bankr. E.D. Pa. 2006) (finding Chapter 13 debtor's attorney's breach of duty to obtain court approval of post-petition compensation from the estate under § 330(a)(4)(B) indefensible); *In re Powell,* 314 B.R. 567, 569-70 (While Chapter 13 debtor does

23

issue here. What is at issue is counsel's disclosure of compensation, the necessity of a Fee Application, and court approval of fees paid from property of the estate, all required by the Bankruptcy Code and Rules.

### 1. The Chapter 13 Debtors employed King "in connection with" a bankruptcy case.

Section 329(a) provides:

> *Any attorney representing a debtor* in a case under this title, *or in connection with such a case*, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, . . . for services rendered or to be rendered . . . in connection with the case by such attorney . . . ."[86]

Section 329 applies in every bankruptcy case and chapter where the debtor is employing an attorney for representation in the bankruptcy case *or* for representation in connection with a bankruptcy case.

Here, when the case was converted to Chapter 13 in April of 2018, the debtors employed King to represent debtor Lopez on the PI claim as "special counsel for the estate" under § 327.[87] The order submitted by debtors' counsel granting the application also stated King was employed as special counsel for the estate. In the title of that order, it specified the employment was pursuant to § 327(e).[88] Notwithstanding the reference to § 327, it is undisputed that debtors were in

_____

not need court authorization to employ special counsel, counsel may only recover fees from bankruptcy estate if approved by the court).

[86] § 329(a). Emphasis added.

[87] Ex. 17.

[88] Ex. 18. As noted previously, § 327(e) authorizes the <u>trustee</u> to employ special counsel to represent the estate.

24

possession of the PI claim and employed King to represent Lopez in the pending PI lawsuit that had been filed during the Chapter 7 proceedings.

King's employment was "in connection with" the bankruptcy case. Debtors' own characterization of their employment of King as special counsel for the estate suggests it was in connection with the bankruptcy case. If so, that triggered the required disclosures of compensation under § 329(a) and Rule 2016. Courts that have interpreted the "in connection with" phrase construe it broadly and describe it as having an extensive reach. The *Gorski* court described the "in connection with" standard as follows:

> Services are "in connection with" the bankruptcy case if it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case. (internal citations and quotes omitted).[89]

The *Gorski* court concluded that § 329(a)'s disclosure requirement applied to divorce counsel employed by the Chapter 13 debtor because "the debtor's divorce proceedings taking place during a bankruptcy case are intertwined with the interests of the estate."[90] Other courts have concluded that the "in connection with" phrase means services that are inextricably intertwined with the bankruptcy or services that are crucial to the debtors' efforts to reorganize under Chapter 13.[91]

---

[89] *Gorski,* 519 B.R. 67, 72.
[90] *Id.* at 73.
[91] *See In re Keller Financial Services of Florida, Inc.*, 248 B.R. 859, 879 (Bankr. M.D. Fla. 2000) (services "inextricably intertwined" with the bankruptcy); *In re Frye,* 570 B.R. 21, 29 (Bankr. D. Vt. 2017) (non-bankruptcy litigation services that are crucial to the debtors' reorganization efforts).

Here, King's representation of debtor Lopez in the PI litigation is even more connected, or intertwined, with the bankruptcy case than the divorce attorney in *Gorski*. King represented the debtor "on behalf of the estate" because the PI claim remained property of the estate and he was to be compensated by the estate out of the recovery or settlement. The confirmed plan provided that the net recovery from the PI lawsuit would fund, in part, debtors' Chapter 13 plan, which would pay in full all creditors. In short, the success of the PI litigation was crucial to debtors' ability to fund their confirmed plan. King's employment by debtors for the PI claim is "in connection with" the debtors' Chapter 13 bankruptcy case and subjects him to § 329(a)'s disclosure requirements.

## 2. King and Hogan were required to disclose their compensation under § 329(a) and Rule 2016(b).

Fee disclosures under § 329 are mandatory.[92] *Any attorney representing a debtor* in connection with a bankruptcy case "shall file with the court a statement of the compensation paid or agreed to be paid."[93] Section 329(a) also requires disclosure of the source of such compensation.

Bankruptcy Rule 2016(b) implements § 329(a). It has the force of law.[94] It provides:

---

[92] *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.),* 4 F. 3d 1556, 1565 (10th Cir. 1993) (attorney who fails to fully comply with the disclosure requirements of § 329 forfeits any right to receive compensation for services rendered and the court may order an attorney to disgorge funds already paid); *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.),* 210 B.R. 844, 848 (10th Cir. BAP 1997) (quoting *Turner, supra).*
[93] § 329(a). Emphasis added.
[94] *See Cohen v. Chernushin (In re Chernushin),* 911 F.3d 1265, 1271 n. 3 (10th Cir. 2018) (stating that the Supreme Court promulgated the Federal Rules of Bankruptcy Procedure pursuant to 28 U.S.C. § 2075 [the Rules Enabling Act] and have the force of law).

26

> *Every attorney for a debtor, whether or not the attorney applies for compensation, shall file* and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, *the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney,* but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. *A supplemental statement shall be filed* and transmitted to the United States trustee *within 14 days after any payment or agreement not previously disclosed.*[95]

This rule requires the attorney to also disclose the existence of a fee-sharing agreement, and if the fee-sharing arrangement is not with an attorney of the same law firm, must include the "particulars" of the fee-sharing agreement. The attorney's obligation to disclose compensation is a continuing one. When, as here, an attorney is employed by the debtor or paid postpetition, the attorney is required to file a supplemental statement in fourteen days if the compensation has not been previously disclosed.

The importance of these disclosure obligations has been stressed by many courts, including the Tenth Circuit Court of Appeals, most recently in *In re Stewart.*[96] These required disclosures are aimed at two concerns.

> Debtors can be exploited by overreaching lawyers who overcharge for their services. And creditors can be denied their proper share of the bankruptcy estate if debtors (particularly those who believe they will net nothing from the nonexempt assets of the estate) direct money to their attorneys in preference to other creditors. *See Bethea*, 352 F.3d at 1127 (when facing bankruptcy, "[d]ebtors may not care who gets what money remains (if the attorney gets more, other creditors get less), and, when clients do not haggle over price, some attorneys will be tempted to divert the funds to themselves by charging excessive fees"); *In re Redding*, 263

---

[95] Fed. R. Bankr. P. 2016(b). Emphasis added.
[96] *SE Property Holdings, LLC v. Stewart (In re Stewart),* 970 F.3d 1255 (10th Cir. 2020).

27

B.R. 874, 878 (B.A.P. 8th Cir.) (§ 329 "reflects Congress' concern that payments to attorneys in the bankruptcy context might be the result of evasion of creditor protections and provide the opportunity for overreaching by attorneys"), *revised on rehearing on other grounds*, 265 B.R. 601 (B.A.P. 8th Cir. 2001); H.R. Rep. No. 95–595, at 329 (1977) (Congress adopted § 329 because "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny"); S. Rep. No. 95–989, at 39 (1977) (same).[97]

In this District the disclosure of compensation by a debtor's attorney is commonly referred to as a Rule 2016 Disclosure. Director's Form B2030 conforms to the requirements of § 329(a) and Rule 2016(b) and is typically utilized by debtor attorneys to disclose their compensation, though it is not required to be used because it is not an Official Form.[98] King did not file a Form B2030 disclosure at the time of his employment by Chapter 13 debtors nor when he was paid from the settlement proceeds. Nor did King file any statement with the Court purporting to meet the requirements of a Rule 2016 Disclosure. Rule 2016(b) specifically places the onus on "every attorney for a debtor" to file the disclosure statement required by § 329(a), regardless of whether counsel will seek compensation from the estate.[99]

---

[97] *Id.* at 1259.

[98] *See* https://www.uscourts.gov/forms/bankruptcy-forms/disclosure-compensation-attorney-debtor-0, last viewed October 20, 2020.

[99] *See In re Gorski*, 519 B.R. 67, 70, 73 (rejecting divorce attorney's excuses that he didn't practice in bankruptcy court, wasn't familiar with bankruptcy procedure, and that it was debtor's bankruptcy counsel's responsibility); *In re Fair*, 2016 WL 3027264, at *13 (Bankr. N.D. Tex. May 18, 2016) (stating that the § 329(a) and Rule 2016(b) disclosure provisions "apply to every attorney employed by every debtor in every chapter, regardless of the purpose for which the attorney is retained, and notwithstanding the fact that an attorney will not be seeking formal employment by, nor compensation from, the bankruptcy estate.").

28

At best, the Chapter 13 debtors' employment application contained an incomplete disclosure of compensation. There, *debtors* disclosed King was to be paid on a contingency basis (without specifying the percentage fee) and purported to attach the employment agreement to the application. However, the employment agreement was <u>not</u> attached to the employment application filed with the Court.[100] Nor was the sharing of fees with Hogan disclosed. After the PI claim was settled and King and Hogan received their fees and expenses, neither of them filed with the Court a supplemental statement disclosing the compensation paid and the source.

The only other "statements" filed with the Court bearing on King's and Hogan's compensation for prosecuting the PI claim are the Chapter 7 trustee's applications to employ them as special counsel under § 327(e). Hogan's proposed compensation was a one-third contingency.[101] King was to be paid a one-third contingency as well.[102] In his affidavit attached to the application, King disclosed that he would share fees with Hogan, but does not give the particulars of the fee-sharing arrangement. King did clarify that the one-third contingency fee was to be paid for Hogan's and King's combined services.

Viewing this record in the best light, the Court would have to assume that the debtors' retention of King on a contingency basis is the same one-third contingency fee under which King and Hogan were employed by the trustee. It is plausible that debtors could have retained King on a different percentage

---

[100] *See* Doc. 48 and Ex. 17.
[101] Ex. 19. Hogan's affidavit attached to the application states that no fee-sharing agreement exists not specifically authorized by bankruptcy statute or rule.
[102] Ex. 21.

contingency fee. While King disclosed the existence of a fee-sharing arrangement with Hogan, the terms of that arrangement were not. Hogan never filed a Rule 2016 Disclosure statement in the Chapter 13 case to disclose his prepetition fee agreement with debtor Lopez for his representation of her on the PI claim, nor his fee-sharing arrangement with King upon referring the matter to King.[103] Finally, neither attorney disclosed the compensation they were paid from the settlement proceeds. Giving the attorneys every benefit from the statements contained in the employment applications filed by debtors and trustee in the case, the Court concludes the defendants' disclosures of compensation under Rule 2016(b) were incomplete and did not fully comply with § 329(a).

### 3.  King and Hogan failed to obtain court allowance and approval of their fees and expenses as required by the Code and Rules.

Section 330(a)(4)(B) governs a Chapter 13 debtor's attorney's compensation.[104] Under § 330(a)(4)(B) the bankruptcy court determines the "reasonable compensation" to be allowed an individual Chapter 13 debtor's attorney "for representing the interests of the debtor in connection with the bankruptcy case."[105] That determination is made by considering the "benefit and necessity of the services" and the factors enumerated in § 330(a)(3).[106] Services provided by the attorney pre- and post-petition may be compensated so long as the attorney's

---

[103] Ex. 1
[104] *In re Young,* 285 B.R. 168, 170 (Bankr. D. Md. 2002) (Chapter 13 debtor's counsel is compensated under § 330(a)(4)(B); compensation by the estate is not authorized under § 330(a)(1)).
[105] § 330(a)(4)(B).
[106] *Id. See In re Hunt*, 588 B.R. 496, 499 (Bankr. W.D. Mich. 2018).

services are rendered in connection with the case.[107] Section 330(a)(4)(B) permits the debtor's attorney to be compensated for services rendered prior to conversion to Chapter 13 as well as those rendered post-conversion in Chapter 13.[108] If the debtor's attorney's fees are excessive, § 329(b) authorizes the Court to order their return to the estate.

Rule 2016(a) governs attorneys seeking compensation and reimbursement of expenses from the estate. It applies to King and Hogan here because their compensation was to be paid and was in fact paid from the PI settlement, which was property of the Chapter 13 estate. Rule 2016(a) required King and Hogan to file Fee Applications with the Court in order for the Court to allow and approve their fees and expenses.[109]

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate *shall file with the court* an application setting forth a detailed statement of (1) the services rendered, time expended, and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, . . . and *whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor* . . .[110]

---

[107] *In re Busetta-Silvia,* 314 B.R. 218, 223-24 (10th Cir. BAP 2004) (holding that § 330(a)(4)(B) makes no distinction between services rendered pre- and post-petition).
[108] *In re Genatossio,* 538 B.R. 615, 617 (Bankr. D. Mass. 2015).
[109] *In re Gorski,* 519 B.R. 67, 74-75.
[110] Fed. R. Bankr. P. 2016(a). Emphasis added.

31

King and Hogan wholly failed to comply with Rule 2016(a). They did not file Fee Applications with the Court. They did not attempt to establish the reasonableness of their fees. Without Fee Applications, the Court cannot evaluate the reasonableness of the compensation they were paid under § 330(a)(4)(B), and the compensation they were paid from the PI settlement was never allowed or approved. Even when faced with the Trustee's request for disgorgement, neither King nor Hogan presented at trial any detailed statement of their services, time expended, expenses incurred, and the particulars of their fee sharing arrangement, to demonstrate the reasonableness of their compensation under § 330(a)(4)(B).

### 4. Full disgorgement of fees is the default sanction for attorneys' noncompliance with § 329, Rule 2016, and § 330(a)(4)(B).

Earlier this year, the Tenth Circuit Court of Appeals issued its decision in *In re Stewart* addressing the appropriate sanction for a debtor's attorney's failure to disclose his compensation under § 329 and Rule 2016.[111] The Court of Appeals found that the bankruptcy court's disgorgement order requiring debtor's counsel to repay $25,000 of nearly $350,000 in fees he received to be so inadequate as to constitute an abuse of discretion, requiring reversal and remand for a hearing on the disgorgement motion. In that case, debtor's counsel did not disclose his compensation until two years after his retention and one year after receiving the payments, and even then, his disclosures were not voluntary. The entirety of fees

---

[111] *SE Property Holdings, LLC v. Stewart (In re Stewart),* 970 F.3d 1255 (10th Cir. Aug. 14, 2020).

paid to debtor's counsel were derived from an undisclosed fee sharing arrangement of a contingency fee on settlement proceeds from debtor's interest in claims against British Petroleum arising out of the 2010 "Deepwater Horizon" oil spill. In the proceedings before the bankruptcy court, debtor's counsel argued that the fees were not for services "in connection with the bankruptcy case" and didn't have to be disclosed; the bankruptcy court found that position to be meritless. Debtor's counsel also argued that his fees were not paid from property of the estate.

The Court of Appeals held that counsel's duty of disclosure under § 329(a) and Rule 2016(b) is that of a fiduciary. It noted that "[c]ourts have found violations of the duty to be intolerable, and the sanctions imposed have been harsh, going far beyond the need to compensate for the damage done or even to deter the specific offender."[112] The Court of Appeals reviewed the case law and noted that it and the lower courts in the Tenth Circuit,[113] as well as other circuit courts, have imposed full disgorgement for § 329(a) violations, even if the failure to disclose was negligent or inadvertent.[114] The *Stewart* court concluded that full disgorgement is the default sanction, and there must be compelling mitigating circumstances *supported by solid evidence* for anything less.[115] Because no hearing was held on the disgorgement motion, the Court of Appeals remanded the case to bankruptcy court.

---

[112] 970 F.3d at 1264.

[113] *Id.* at 1264-65. *See Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers),* 4 F.3d 1556, 1565 (10th Cir. 1993)*; In re Brown,* 371 B.R. 486 (Bankr. N.D. Okla. 2007); *In re Lewis,* 309 B.R. 597, 602-03 (Bankr. N.D. Okla. 2004).

[114] *See Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.),* 210 B.R. 844, 849 (10th Cir. BAP 1997) (finding a clear violation of § 329 and Rule 2016 "is sufficient, in itself, to deny all fees."). *See also In re Woodward,* 229 B.R. 468, 475 (Bankr. N.D. Okla. 1999) (same).

[115] *Stewart,* 970 F.3d 1255, 1267-68.

Though *Stewart* pertains to debtor's attorney's disclosure of compensation under § 329(a) and Rule 2016(b), the concerns underlying full and complete disclosures of compensation would appear to apply equally to obtaining court approval of attorney fees paid from property of the estate under Rule 2016(a) and § 330(b)(4)(B). As stated in *In re Brown,*

> Whether or not an attorney representing a debtor seeks compensation under title 11, the Court must review any payments or agreements for compensation related to a case made after one year before the filing of the petition. If such payment or agreement is found to exceed the reasonable value of such services, the Court may cancel the agreement or disgorge any such payment to its source. The purpose of this review is "to prevent bankruptcy attorneys from extracting more than their fair share from prospective debtors willing to do whatever is necessary to obtain their counsel of choice and avoid unfavorable bankruptcy proceedings." Rule 2017 implements § 329 by directing court review of all bankruptcy-related fees, whether generated pre-or post-petition, whether the payment or transfer is made directly or indirectly, to determine whether those fees are excessive. (internal citations omitted).[116]

The transparent act of filing and appropriately noticing a Fee Application and obtaining court allowance and approval would likely have protected defendants from disgorgement in this case. It would have allowed the court and creditors to evaluate the reasonableness of the fees sought to be paid.[117] Though *Brown* was a Chapter 12 case, the bankruptcy court made clear the crucial role of § 330.

> The review conducted pursuant to § 329 and Rule 2017 is in conjunction with the provisions of the Code which require court review of attorney fees earned in a particular case. . . . Section 330 establishes the exclusive means of allowing a claim for professional fees in a bankruptcy proceeding. The Court has an independent duty to review all requests

---

[116] *In re Brown,* 371 B.R. 486, 497 (Bankr. N.D. Okla.), *amended in part on other grounds* 371 B.R. 505 (Bankr. N.D. Okla. 2007).
[117] *See In re Gorski,* 519 B.R. 67, 71.

34

for fees to determine their allowability under § 330 of the Bankruptcy Code, even if no party in interest objects to the amount of fees sought. As the Bankruptcy Appellate Panel for the Tenth Circuit made clear in *In re Gantz,* the plain language of § 330 means that "the court *may,* not must, award reasonable compensation," and that no fees are due an attorney for services related to a bankruptcy unless and until those fees are awarded under § 330. (internal cites omitted)[118]

The attorney in *Brown* sought and obtained approval of his employment under § 327 but failed to obtain approval of his fees under § 330.[119] The *Brown* court held that disgorgement of fees "applies equally to an attorney that fails to seek the court's approval of fees," even though the attorney may have done meritorious work on behalf of debtors.[120] The failure to obtain court approval of fees is a "serious" violation of § 330.[121] The Court concludes that *Stewart's* default sanction of full disgorgement applies to the defendants' failure to obtain court approval of their fees.

In the instant case, the Court held an evidentiary hearing on turnover and disgorgement. Defendants had every opportunity to demonstrate mitigating circumstances that would warrant less than full disgorgement. At that hearing, King and Hogan did not directly address disclosure of compensation under § 329(a) or Rule 2016(b) or their failure to submit Fee Applications and obtain court approval of their fees under § 330(a)(4)(B) and Rule 2016(a). King's position was

---

[118] *Brown,* 371 B.R. 486, 498-99.
[119] Under *Brown,* the fees of an attorney employed under § 327 are subject to court review and approval under § 330. *See* § 330(a)(1), (2) and (3). Thus, even if the Court were to assume that debtors' employment of King was proper under § 327(e), he was still required to submit a fee application and obtain court allowance and approval of his attorney fees.
[120] *Brown,* 371 B.R. 486, 500.
[121] *Id.* at 500-01.

35

that *legally,* defendants should not be required to disgorge their fees because they owed no duties to the estate since King was hired by the debtors in the Chapter 13 case to represent Lopez personally on the PI claim, and it was no longer property of the estate after conversion from Chapter 7—positions that this Court rejects. These same legal arguments are apparently the basis for King's and Hogan's contention that they were not required to submit Fee Applications and obtain court approval of their fees, a position that the Court finds incorrect by its plain reading of §§ 329, 330(a)(4)(B) and Rule 2016.

As analyzed earlier, the defendants might have argued that their failure to make a Rule 2016 disclosure of compensation was a technical violation because some, but not all, of the information can be found in the employment applications filed in the case. A similar argument was made in *Smitty's Truck Stop* to no avail.[122] There the attorney failed to file a disclosure statement indicating receipt of a $5,000 prepetition retainer and the source, but the payment of the retainer was reflected in the debtor's statement of financial affairs. Though the omission may have been an oversight, the appellate panel held that the bankruptcy court did not abuse its discretion in ordering disgorgement of the retainer *and* denial of all fees.

> Appellant also argues that the retainer was disclosed in Smitty's statement of affairs. If we accepted this argument, we would nullify the § 329 and Rule 2016(b) disclosure requirements, which are designed to enable courts to oversee the fee arrangement between debtor and its counsel. More importantly, it is not the court's job to search through the record to find all relevant facts relating to an attorney's employment. (citation omitted). . . .

---

[122] 210 B.R. 844 (10th Cir. BAP 1997).

36

> We conclude that the Appellant's failure to disclose the receipt of the retainer in his Rule 2016 statement constituted a clear violation of § 329 and Rule 2016(b). Even if this failure was negligent or inadvertent, it is sufficient, in itself, to deny all fees. (citation omitted).[123]

Defendants' belief that they were not subject to the requirements of Rule 2016, § 329, and § 330(a)(4)(B) under the circumstances of this case are not the compelling, mitigating circumstances that would allow this Court to order less than full disgorgement of defendants' attorney fees. Each shall be required to disgorge their attorney fees and reimbursed expenses to the estate to be administered by the Chapter 7 trustee.

### C. <u>King's and Hogan's Defenses</u>

Defendants contend that the $14,545.63 default judgment obtained by the Trustee against debtors in a separate adversary proceeding for turnover of settlement proceeds and revocation of their discharge bars the Trustee's turnover and disgorgement complaint against them. Defendants initially raised three affirmative defenses based on the prior proceeding: collateral estoppel, res judicata and election of remedies, but defendants did not address at trial or in their post-trial brief any of these alleged defenses to turnover. For the first time, defendants raised judicial estoppel in their post-trial brief as an affirmative defense to turnover. All of these defenses are without merit.

### 1. Collateral Estoppel/Issue Preclusion

Collateral estoppel prevents parties from relitigating issues already decided between parties and their privies in a prior action. Federal principles of issue

---

[123] 210 B.R. at 849.

preclusion apply to prior judgments that are rendered by a federal court.[124] The doctrine applies only if:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[125]

Collateral estoppel does not bar the Trustee's turnover claim against defendants here. First, the Trustee procured a default judgment for turnover of settlement proceeds against debtor Lopez; it was not actually litigated on the merits. It is well-settled that under federal collateral estoppel, a default judgment is generally not afforded preclusive effect in later proceedings.[126] Second, the issue of turnover against debtor Lopez is not identical to the issue of turnover against defendants. Under § 542(a), the trustee was required to prove that each "entity" from whom turnover was sought, had possession, custody, or control of the PI settlement during the case. As stipulated in this case, debtor and defendants had possession of the PI settlement at different times and in different amounts. There may be only a single recovery of the total PI settlement, but collateral estoppel doesn't bar pursuit of turnover against any entity that had possession, custody or control of property of the estate during the case.

---

[124] *Dodge v. Cotter Corp.,* 203 F.3d 1190, 1197 (10th Cir. 2000); *In re Chavez,* 614 B.R. 874, 886 (Bankr. D. N.M. 2020).

[125] *B-S Steel of Kan. v. Tex. Indus.*, 439 F.3d 653, 662 (10th Cir. 2006) (quoting *Estate of True v. C.I.R.*, 390 F.3d 1210, 1232 (10th Cir. 2004)).

[126] *Arizona v. California*, 530 U.S. 392, 414 (2000); Restatement (Second) of Judgments § 27 (1982).

38

### 2. Res judicata/Claim Preclusion

Under Tenth Circuit law, there are three elements required to assert a defense of *res judicata*: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[127]

Where claims are asserted in consecutive lawsuits against joint obligors for the same injury, a judgment in the first suit does not bar a second suit against other potentially liable parties under the doctrine of res judicata.[128] The Kansas District Court addressed res judicata in the context of consecutive ERISA lawsuits.

> Plaintiffs claim that all defendants are jointly liable, as joint obligors, for the same contribution obligations created under the same collective bargaining agreement. "But claims against joint obligors are generally regarded as separate and distinct for res judicata purposes." *Tavery v. United States,* 897 F.2d 1032, 1033 (10th Cir.1990). "When a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 367 (2d Cir.1995).[129]

In the turnover setting, bankruptcy courts have permitted trustees to pursue tax refunds from the debtors *and* the taxing authorities after the taxing authorities had mailed state and federal refunds to the debtors directly.[130] And like the present

---

[127] *Pelt v. Utah*, 539 F.3d 1271 (10th Cir. 2008) (citing *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)).

[128] *See Tavery v. United States,* 897 F.2d 1032, 1033 (10th Cir. 1990) (stating that claims against joint obligors are generally regarded as separate and distinct for purposes of res judicata).

[129] *Boilermaker-Blacksmith Nat. Pension Fund v. Gendron,* 67 F. Supp. 2d 1250, 1255 (D. Kan. 1999).

[130] *In re Lancaster,* 2012 WL 3065544, at *2 (Bankr. E.D. N.C. 2012) (citing *Beaman v. Vandeventer Black (In re Shearin),* 224 F.3d 353, 356 (4th Cir. 2000) and concluding that "liability is joint and several as to each obligation, and the trustee has discretion as to the respondents from which he seeks recovery.").

39

case, in *In re Cooper* the Chapter 7 trustee obtained a default judgment against the debtor for the amount of the settlement of his personal injury claim and revoked debtor's discharge for failing to turn over the settlement. The trustee then demanded the debtor's attorney to turn over the settlement proceeds under § 542(a). The bankruptcy court found the attorney jointly and severally liable with the debtor for the full value of the settlement proceeds, even though the attorney had disbursed the debtor's share of the settlement.[131]

Nor are the defendants in privity with the Chapter 13 debtor. While the Chapter 13 debtor was in possession of the PI claim, the claim was property of the estate and the defendants prosecuted that claim on behalf of the estate.

### 3.    Election of Remedies

This doctrine is intended to prevent a plaintiff from obtaining double redress for a single wrong based on inconsistent or mutually exclusive remedies.[132] As an affirmative defense, defendants have the burden of proving the Trustee is pursuing inconsistent remedies.[133] Defendants have not met their burden of proof. There is nothing inconsistent about pursuing multiple parties who are jointly and severally liable for turnover of property of the estate that the parties possessed during the case. The turnover remedy is the same versus debtor as it is versus defendants.

---

[131] *In re Cooper,* 263 B.R. 835, 839. *See also, In re Stinson,* 221 B.R. 726, 728 (Bankr. E.D. Mich. 1998) (debtor ordered to turnover $20,000 settlement and her personal injury attorney ordered to turnover his fee, "with joint and several liability to that extent"); *Hunter v. Patton (In re Patton),* 200 B.R. 172, 177-78 (Bankr. N.D. Ohio 1996) (on turnover claim, judgment granted against debtors and their attorney, jointly and severally, in the full amount of the $37,000 settlement of their personal injury claim).
[132] *Donner v. Nicklaus,* 778 F.3d 857, 876 (10th Cir. 2015).
[133] *Kuhl v. Hayes,* 212 F.2d 37, 39 (10th Cir. 1954).

Here, the Trustee acknowledges that he can only collect the principal amount of $22,500 between debtors and these defendants. The election of remedies doctrine is inapplicable.[134]

### 4. Judicial Estoppel

Defendants did not timely raise this affirmative defense in their answers to the Trustee's complaint, nor is it included in the final pretrial order. They have waived a defense based on judicial estoppel and are precluded from raising it for the first time in post-trial briefing.[135]

Even if the doctrine of judicial estoppel had been timely raised, it does not apply here. Judicial estoppel applies when (1) a party takes a position clearly inconsistent with an earlier position in another legal proceeding; (2) adopting the later, inconsistent position creates an impression that either the earlier or later court was misled; and (3) allowing the party to change their position would give them an unfair advantage.[136] The doctrine is designed to protect the integrity of the

---

[134] *See Beaman v. Vandeventer Black, LLP (In re Shearin),* 224 F.3d 353, 357 (4th Cir. 2000) (rejecting argument that trustee had elected a remedy by proceeding first against the debtor, then the law firm for turnover of pre-petition year-end profits it had paid to debtor, but noting the trustee may only collect once); *Farmers State Bank of Ingalls v. Friesen,* 15 Kan. App. 2d 132, 137, 803 P.2d 1049 (1990) (permitting lender to pursue remaining comakers of promissory notes after allowing lender's claim against a deceased comaker's estate, noting the claims are not inconsistent and the comakers are jointly and severally liable).

[135] *See* Fed. R. Civ. P. 8(c)(1) made applicable to adversary proceedings by Fed. R. Bankr. P. 7008.

[136] *Patriot Mfg, LLC v. Hartwig, Inc.,* 996 F. Supp. 2d 1120 (D. Kan. 2014), *aff'd* 613 F. Appx. 753 (10th Cir. Aug. 21, 2015). *See also Eastman v. Union Pac. R.R.,* 493 F.3d 1151, 1156 (10th Cir. 2007).

41

court system, not any individual litigant.[137]

Defendant King asserts that the Trustee took an inconsistent position in the first adversary proceeding against debtors by asserting that it was debtors who failed to turn over their settlement proceeds. Now, the Trustee asserts in this proceeding that King and Hogan failed to turn over the settlement proceeds. Defendants misapply judicial estoppel on these facts. Both debtors and defendants failed to turn over property of the estate—the settlement proceeds. The Trustee did not assert "clearly inconsistent" positions. The Trustee, by separate suits, seeks turnover of the full PI settlement from debtors and defendants to the extent each of them possessed some or all of the settlement proceeds during the case. They are jointly and severally liable for turnover. Trustee concedes that he is only entitled to one recovery totaling $22,500. Judicial estoppel does not apply.

### 5. Equity

Finally, in his post-trial brief (also adopted by Hogan), King makes an appeal to the Court's equity powers. He argues that he should not be punished for disbursing the net settlement to Lopez since it was his ethical obligation to do so under the Kansas Rules of Professional Conduct (KRPC) when she demanded it. He also asserts that he should not be held responsible for the bad conduct of his former client in not remitting the net settlement to the Chapter 13 trustee. The Court previously recognized King's admonition to Lopez to contact her bankruptcy

---

[137] *In re Riazuddin,* 363 B.R. 177, 186, 187-88 (10th Cir. BAP 2007) (finding no basis to apply the doctrine to the trustee where the debtors omitted a personal injury claim from their schedules and permitting the trustee to pursue the claim that vested in the estate).

counsel and cautioning her not to spend the money. King recognized that Lopez was obligated under her confirmed plan to provide the funds to the Chapter 13 trustee.

The Court notes that § 542(c)'s good faith defense only protects transferors of property of the estate whom are without actual notice or knowledge of debtor's bankruptcy.[138] Defendants did not assert this defense, nor could they. They were well aware of debtors' pending bankruptcy.

Under a similar situation in *In re Sann,* the bankruptcy court denied equitable relief from turnover to a debtor's attorney who had disbursed over $53,000 from his IOLTA trust account, funds that were property of the estate.[139] The district court concluded the bankruptcy court did not abuse its discretion.[140] Here, King's liability for turnover is based on King's own possession, custody, and control of the settlement check held in his trust account during the case. As in *Sann*, King could have interpleaded the funds or held them while seeking instruction from the Court.[141] The Court's equitable power under § 105(a) can only

---

[138] *In re Cooper,* 263 B.R. 835, 837-38 (Bankr. S.D. Ohio 2001) (stating that § 542(c)'s lack of notice and actual knowledge of the bankruptcy is the only defense to turnover and supplants any equitable defense such as good faith).

[139] *See In re Sann,* 555 B.R. 721, 742 (Bankr. D. Mont. 2016) (noting that the attorney could have interpleaded the funds or held the funds until he had further clarification and avoided liability under § 542(a)), *aff'd* 2017 WL 4678196 (D. Mont. Oct. 17, 2017).

[140] 2017 WL 4678196, at *5-*7 (D. Mont. Oct. 17, 2017) (also rejecting the attorney's equitable defense of double recovery where the trustee had not yet obtained a single recovery of the assets demanded; the trustee may look to multiple parties to recover the same loss).

[141] KRPC 1.15, cited by defendants in their post-trial brief, recognizes in Comment [4] that:
    Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client and, accordingly, may refuse to surrender the property to the

43

be exercised consistent with the Code. It cannot use § 105(a) to override substantive bankruptcy law such as the plain language of § 542(a).[142] As both the *Cooper* and *Sann* courts also concluded, § 542's language is clear; it does not provide room for the type of equitable relief sought by defendants in this case.

With regard to disgorgement, the Court notes that King has been employed over the years by this District's Chapter 7 trustees as special counsel to litigate personal injury claims on behalf of bankruptcy estates. On those occasions, he has capably represented the estate and complied with the Code and Rules for obtaining compensation. It appears that here, converting the case to Chapter 13 and representing the debtor-in-possession on behalf of the estate led King to believe, unfortunately, that he was no longer subject to § 329, § 330, or Rule 2016, notwithstanding his stated understanding in his employment affidavit that approval of his employment was not approval of his compensation and that he was to represent Lopez as counsel for the estate.[143]

Though the Court wants the record to be clear that there is no evidence before it that King's or Hogan's work on behalf of the debtors in obtaining the settlement in the PI case was deficient or dishonest, this Court is duty-bound to follow Tenth Circuit authority on disgorgement of fees as most recently articulated

---

client. . . . Vol. 1-State, KANSAS COURT RULES AND PROCEDURE, S. Ct. Rule 226 (Thomson Reuters 2020).

[142] *Law v. Siegel,* 571 U.S. 415, 421 (2014) (Section 105(a) does not permit the bankruptcy court to override explicit mandates of other sections of the Code). *See also In re Sann,* 555 B.R. 721, 744 (applying *Law v. Siegel* and concluding nothing in the plain language of § 542(a) permitted equitable relief from turnover liability); *Cooper,* 263 B.R. 835, 838.

[143] Ex. 17.

44

in *Stewart*. This leaves the Court with no alternative but to order the default remedy of full disgorgement under the facts of this case, the lack of compliance with the laws governing disclosure and court approval of fees and expenses in such representations, the lack of evidence presented to the Court detailing the work done for the fees charged, the particulars of how it was split between the attorneys, and the lack of compelling mitigating circumstances supported by solid evidence.

IV.     Conclusion and Orders

The Trustee is entitled to judgment against defendants King and Hogan on his complaint for turnover under § 542(a) and for disgorgement of fees and expenses.

Defendants are liable for turnover of the amount of the PI settlement that each of them possessed, had custody of, or controlled during the case. Defendant King is liable for $22,500 and Defendant Hogan is liable for $2,894.30. Defendant King is jointly and severally liable with debtors to the extent of $14,545.63. Defendant King is jointly and severally liable with defendant Hogan to the extent of $2,894.30. Between debtors, King, and Hogan, the Trustee is only entitled to a single satisfaction of $22,500.

Additionally, defendants' noncompliance with § 329, § 330(a)(4)(B), and Rule 2016 warrants full disgorgement of their fees and expenses disbursed from the PI settlement without court approval and without disclosing their compensation and fee-sharing arrangement. A judgment ordering disgorgement of $2,894.30 to the estate will be entered against defendant Hogan. A judgment ordering disgorgement

of $5,060.07 to the estate will be entered against defendant King. Again, the Trustee may have but one satisfaction of the total amount due of $22,500 from all parties, and under all theories. Hogan cannot be liable for more in principal than $2,894.30.

Because the Court received no evidence at trial regarding the amounts the Trustee has collected from debtors on their turnover judgment, the Court will hold in abeyance the entry of judgment against King and Hogan as follows. The Trustee is directed, within seven (7) days from entry of this Opinion, to file with the Court and provide to defendants, an accounting as of the date of this Opinion, of the principal amounts collected on the debtors' $14,545.63 judgment and to be credited against King's turnover liability, along with the dates collected. Defendants will have seven (7) days to file written objections, if any, to the accounting. The Court will thereafter convene a status conference or enter judgment against King and Hogan, as appropriate. Trustee and defendants are encouraged to confer and attempt to resolve any objections to the Trustee's accounting and amount of the judgments (including prejudgment interest and costs) to be entered against King and Hogan.

The Court recognizes that the debtors' hands are far from spotless in this matter. If, after collection of the judgments and payment of appropriate interest and authorized trustee fees and expenses there remains property of the estate in excess of what is necessary to pay the creditors, the Court will entertain a motion

regarding the proper disbursement of the remaining funds between debtors and King and Hogan.

### #